Anthony M. Solis, SBN 198580
A Professional Law Corporation
23679 Calabasas Road, Suite 412
Calabasas, CA 91302-1502
213-489-5880 - Phone
anthonysolislaw@gmail.com

Attorney for Defendant
Gustavo Cortes-Saucedo

United States District Court

Central District of California

Western Division

| | | |
|---|---|---|
| United States of America, | ) | Case No.: 18-cr-466-DSF-12 |
| Plaintiff, | ) | |
| | ) | |
| | ) | Gustavo Cortes-Saucedo's |
| | ) | Sentencing Memorandum |
| v. | ) | |
| | ) | |
| Zirahuen Salgado Gonzalez, et al. | ) | Date: October 21, 2019 |
| | ) | Time: 8:30 a.m. |
| #12 - Gustavo Cortes-Saucedo | ) | Courtroom: 7D |
| Defendants. | ) | Hon. Dale S. Fischer |

Comes now the defendant, Gustavo Cortes-Saucedo, by and through his counsel of record, Anthony M. Solis, and submits his sentencing memorandum to the Court.

Dated: September 16, 2019

Anthony M. Solis,
A Professional Law Corporation

*Anthony M. Solis /s/*

By: Anthony M. Solis,
Attorney for Defendant
Gustavo Cortes-Saucedo

## Objections to Presentence Investigation Report

1. The PSR failed to recognize the less than minor role that Mr. Cortes-Saucedo played in the conspiracy

Mr. Cortes-Saucedo should be deemed a less than "minor" participant. The USSG has fashioned a multi-part test to determine whether a mitigated role should be applied. As to Mr. Cortes-Saucedo, this is analyzed as follows:

**i.** *the degree to which the defendant understood the scope and structure of the criminal activity.*

Even as acknowledged by the government in its sentencing position, "Defendant served as a courier. . ." Govt. Sentencing memo p. 2. The PSR acknowledges that "The instant offense involves criminal conduct in relation to a large-scale drug trafficking cartel based in Mexico. It appears the average participants in this case are the individuals who negotiated drugs sales, coordinate [sic] the sale/transportation of the drugs, and/or sold drugs." PSR ¶ 47. Mr. Cortes-Saucedo had **no** understanding of the scope and structure of the criminal activity involved in the offense. According to his post-arrest statement–which the government later confirmed during a safety-valve proffer--Mr. Cortes-Saucedo knew *only one* person in the entire organization, the person who facilitated Mr. Cortes-Saucedo's involvement in the offense conduct. In that light, Mr. Cortes-Saucedo knew nothing of the scope or structure of the overall criminal organization of he played a tiny part.

*ii. The Degree to Which the Defendant Participated in Planning or Organizing the Criminal Activity*

Mr. Cortes-Saucedo played absolutely no part in planning or organizing any criminal activity. As confirmed by the government and the Probation Office, Mr. Cortes-Saucedo was merely a courier on at least one transaction. His criminal activities were directed by others, not the other way around. The PSR found that "Cortes' role was to obtain packages of cocaine to deliver to another individual. There is no evidence or indication that he was directing other individuals in any

1 criminal conduct.

2    *iii. The Degree to Which the Defendant Exercised Decision-Making*
3 *Authority or Influenced the Exercise of Decision Making Authority.*

4    There was no "decision-making" authority exercised or influenced by Mr.
5 Cortes-Saucedo. With regard to Mr. Cortes-Saucedo, this prong is a complete non-
6 factor.

7    *iv. The Nature and Extent of Defendant's Participation in the*
8 *Commission of the Criminal Activity, Including the Acts the Defendant*
9 *Performed, and the Responsibility and Discretion the Defendant Had in*
10 *Performing those Acts.*

11    Mr. Cortes-Saucedo was merely a courier. The PSR confirms that "it seems
12 that he was working at the direction of others and did not have discretion of others
13 and did not have discretion as to the amount of drugs he would receive or to whom
14 would deliver the drugs. PSR ¶ 48. Mr. Cortes-Saucedo confirmed during his safety
15 valve proffer that he was told to re-wrap the drugs he received prior to delivery.
16 While the PSR suggests that "it is unclear specifically how Cortes utilized this
17 paraphernalia in relation to the instant offense, the possession of these materials
18 supports that Cortes was otherwise involved in drug trafficking activities." PSR ¶ 49.
19 This is wholly speculative and clarified during Mr. Cortes-Saucedo's safety valve
20 proffer. Other than securing the drugs within this offense, Mr. Cortes-Saucedo was
21 not involved in separate activity and all the illegal conduct in which he engaged was
22 within this offense.

23    *v. The Extent to Which the Defendant Stood to Benefit from the*
24 *Criminal Activity.*

25    Mr. Cortes-Saucedo stood to benefit very little from this criminal activity.
26 Indeed, he was paid as a courier only. He enjoyed no profits or largesse beyond the
27 amount he was paid to take a package from here to there. In addition, the money that
28 he was paid was all seized by law enforcement at the time of his arrest. See PSR ¶ 31.

To the extent that Mr. Cortes-Saucedo engaged in more than one transaction, perhaps he may not be properly deemed a "minimal" participant. However, under the foregoing analysis he is **subtantially less culpable** than the average participant and should be deemed more than a minor but less than a minimal participant for a three (3) level downward adjustment.

## Memorandum of Points and Authorities

## Introduction

The story of Gustavo Cortes-Saucedo is a rather tragic if not uncommon story. An otherwise law abiding member of the community is drawn into criminal conduct by the lure of quick money. Mr. Cortes-Saucedo, in an effort to support his family, was unable to resist the entreaty of a "friend" who offered him some relief from his financial distress. As the PSR notes, Mr. Cortes-Saucedo has no criminal history prior to or since the offense conduct, underscoring the aberrational nature of his foray into criminal conduct. When confronted with the conduct by law enforcement, he promptly accepted responsibility for his conduct and admitted his wrongdoing. PSR ¶ 34.

Mr. Cortes-Saucedo has demonstrated through his history and characteristics, including his qualification for safety valve, that he requires little additional punishment to conform his behavior to the law. The direct and collateral consequences of his conviction–even without a custodial sentence–will completely alter his life and that of his family. For that reason and for the following reasons, it is respectfully requested that the defendant be sentenced to a period of supervised release or in the alternative, a very limited custodial sentence that reflects Mr. Cortes-Saucedo's minor role, the aberrational nature of his offense conduct, and the crushing collateral consequences his will undoubtedly suffer as a result of his conviction.

## I.

## The Factors Under 18 U.S.C. § 3553(a)

Under 18 U.S.C. § 3553(a), the Court must consider certain non-guidelines factors that assist in fashioning the appropriate sentence for Mr. Cortes-Saucedo. The relevant of these factors are discussed below.

### A.    The Nature and Circumstances of the Offense.

The nature and circumstances of the offense are rather simple. Mr. Cortes-Saucedo order to help support his family during a downturn in his employment,

agreed to deliver a quantity of drugs from one person to another for pay. He was not part of the overall criminal organization, he played a very minor role and his criminal conduct was limited and discrete.

### B.    The History and Characteristics of the Defendant.

Mr. Cortes-Saucedo is something of an immigrant success story. His parents came to the U.S. in search of a better employment opportunities. PSR ¶ 69. His parents appear to be a solid, traditional family who started out with his father working two jobs and then, upon securing a better position, found a higher paying job to work fewer hours. His mother is a homemaker who helped raise three of the couple's children. Each of Cortes-Saucedo's siblings appear to be solid members of the community for whom education and hard work is a significant priority.

Mr. Cortes-Saucedo shares his family's work ethic, however, Mr. Cortes-Saucedo appears to endure financial challenges from supporting his five (5) children, one of whom has special needs, including autism and speech and emotional difficulties, requiring various therapies. PSR ¶ 73. In addition, as the Court can discern from his five children with two different mothers, Mr. Cortes-Saucedo manages his relationships with his children and their mothers to the best of his ability, however, the arrangement appears fraught and stressful. The difficulty of supporting his children and working likely caused the pressure that led Mr. Cortes-Saucedo to succumb to the lure of additional income from the criminal activity.

Nevertheless, Mr. Cortes-Saucedo has demonstrated that he is capable of promptly returning to his law-abiding, hard working life. His prompt, post-arrest acceptance of responsibility reflected the tenuous hold that a life of crime held on him. The fact that he promptly pled guilty and successfully qualified for safety valve relief and the fact that the offense conduct occurred over four (4) years ago and Mr.

Cortes-Saucedo has never reoffended speaks a great deal to his character.[1] Another way of viewing Mr. Cortes-Saucedo is: after his initial arrest, he understood the error of his ways and went back to working and supporting his family, not continuing the offense figuring he escaped the consequences.

Perhaps the greatest collateral consequence of Mr. Cortes-Saucedo's conviction is that he will likely suffer deportation since he is not a citizen of the United States and this controlled substance offense will make it impossible for him to adjust his status. This will cut him off from his entire nuclear and extended family, all of whom reside in the U.S.  It will make it more difficult for him to support his family and emotionally, it will cut him off from any support system. While Mr. Cortes-Saucedo may have underestimated this eventuality when calculating the risks involved with his criminal conduct, it will nevertheless be a catastrophic blow to his family.

### C.   The Need for the Sentence to Reflect the Seriousness of the Offense, Promote Respect for the Law and Provide Just Punishment

The offense to which Mr. Cortes-Saucedo pled is indeed a serious crime. However, even a more mitigated sentence than that advised by the guidelines can reflect the seriousness of the offense and promote respect for the law. While custody time appears one of the most common tools for exacting punishment on criminal defendants, it is also the most blunt and destructive. Incarceration's ability to punish and isolate often undervalues the devastating effects that other direct and collateral consequences that criminal convictions offer. In Mr. Cortes-Saucedo's case, his criminal conviction will decimate his employment potential–indeed Mr. Cortes-Saucedo will likely be unable to renew his license with the California State Contractor's Licensing Board. PSR ¶ 86. This will destroy his company. Also, his conviction will cause him to lose his permit to work and his ability to remain in the

---

[1]The PSR reports that Mr. Cortes-Saucedo was arrested on August 6, 2015 and released and arrested again just over three years later on August 8, 2018 for this case. Since his 2018 arrest, he's been fully compliant with his pre-trial supervision. PSR ¶ 8.

United States. These consequences have the potential to put in very stark relief the seriousness of the offense in which Mr. Cortes-Saucedo engaged and each will likely provide significant, if even more than just, punishment for the offense conduct. With the "promotion of respect for the law" - it can hardly be posited that any person in Mr. Cortes-Saucedo's condition would disrespect a drug law that deprives you of your career, residency and ability to be with your family.

### D. To Afford Adequate Deterrence to Criminal Conduct/To Protect the Public Against Further Crimes of the Defendant.

As noted above, Mr. Cortes-Saucedo has no criminal history and no subsequent criminal conduct. A review of the PSR in this case reveals that Mr. Cortes-Saucedo requires little additional punishment to deter him personally from addional criminal conduct. With regard to general deterrence, no rational person would deem Mr. Cortes-Saucedo's foray into crime "enticing" or appealing considering his zero profit and crushing consequences.

## II.

## The Guidelines Calculations

### The Presentence Investigation Report (PSR)

The PSR calculates the guidelines as follows:

| | | | |
|---|---|---|---|
| Base offense level: | | 24 | [USSG § 2D1.1(a)(5)] |
| Specific Offense Characteristics: | | | |
| Safety Valve | | -2 | [USSG § 2D1.1(b)(17) |
| Acceptance of Responsibility: | | -3 | [USSG § 3E1.1(a)] |
| Total Offense Level: | | **19** | |

The PSR calculates Mr. Cortes-Saucedo's criminal history category to be I, resulting from zero (0) criminal history points. PSR ¶¶ 60-61.

The resulting guidelines range is 30-37 months in custody. The government concurs.

Mr. Cortes-Saucedo calculates the guidelines as follows:

| | | |
|---|---|---|
| Base offense level: | 24 | [USSG § 2D1.1(a)(5)] |
| Specific Offense Characteristics: | | |
| Safety Valve | -2 | [USSG § 2D1.1(b)(17) |
| Role in the offense | -3 | [USSG § 3E1.1(b)] |
| Acceptance of Responsibility: | -3 | [USSG § 3E1.1(a)] |
| Total Offense Level: | **16** | |

With Mr. Cortes-Saucedo's criminal history category I, this would yield an advisory guidelines range of 21-27 months.

## **Conclusion**

The defendant respectfully requests that the Court sentence Mr. Cortes-Saucedo to a period of supervised release, but in any event significantly less than the 21-27 month range suggested by the guidelines.

Dated: September 17, 2019

Anthony M. Solis
A Professional Law Corp.

*Anthony M. Solis /s/*
_____
By: Anthony M. Solis,
Attorney for Defendant
Gustavo Cortes-Saucedo